Michael J. Curls (SBN 159651)
Nichelle D. Jones (SBN 186308)
LAW OFFICE OF MICHAEL J. CURLS
4340 Leimert Blvd., Suite 200
Los Angeles, CA 90008
Telephone:    (323) 293-2314
Facsimile:    (323) 293-2350
Email:        michael@mjclawoffice.com
              nichelle@mjclawoffice.com

Attorneys for Plaintiff TENE CARR

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TENE CARR,<br><br>        Plaintiff,<br><br>vs.<br><br>FEDERAL BUREAU OF INVESTIGATION, AND DOE DEFENDANTS 1-10 INCLUSIVE<br><br>        Defendants | PLAINTIFF'S COMPLAINT FOR:<br><br>1.  TITLE VII OF THE CIVIL RIGHTS ACT OF 1964; AND<br>2.  42 U.S.C. § 1981;<br><br>JURY TRIAL DEMANDED |

Plaintiff TENE CARR, by and through her attorneys of record Michael J. Curls and Nichelle D. Jones of the Law Office of Michael J. Curls, alleges and complains as follows:

## I.

## **INTRODUCTION**

1.     Plaintiff Tene Carr ("Plaintiff" or "Ms. Carr") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e; and the Civil Rights Act of 1991, 42 U.S.C. §1981; for relief for discrimination based on race (African-American); religion (Christian); sex (Female); disability (Physical and Mental); and Reprisal (Retaliation from 2009 and 2015 EEO Complaint).

2.     The consequent hostile work environment, discriminatory termination and retaliation at the hands of Defendants and its agents have caused Plaintiff harm.

## II.

## <u>JURISDICTION AND VENUE</u>

3.      Jurisdiction is proper in the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (3) and (4), *et seq.*

4.      Venue is proper in the Western Division of California because the acts or omissions which form the basis of the Plaintiff's claims occurred in the City of Los Angeles, within the Central District.

## III.

## <u>PARTIES</u>

5.      Plaintiff, Tene Carr is an African American, Christian female who was employed as a Special Agent with the Federal Bureau of Investigation from December 1, 2002 until the time of her termination, June 1, 2015.

6.      Defendant Federal Bureau of Investigation is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of employees or agents of Defendant; in addition, Defendant is  the employer of persons who have committed negligent, discriminatory acts and/or omissions against Plaintiff within the course and scope of her employment. Therefore, Defendant is liable pursuant to the Doctrine of *Respondeat Superior*.

## IV.

## <u>EXHAUSTION OF ADMINISTRATIVE REMEDIES</u>

7.      Plaintiff has exhausted all of her administrative remedies.

8.      On or about June 24, 2015, Plaintiff timely contacted an EEO counselor and subsequently filed an informal complaint of discrimination based on race, religion, disability and reprisal.

9.      After the agency issued a Notice of Right to File, dated October 23, 2015, Plaintiff timely filed a formal EEO complaint, on or around November 6, 2015 complaining of the discriminatory non-selection for the position at issue herein.

10.     Since 180 days from the date of filing her complaint has passed, and because the Agency did not issue a final decision, Plaintiff now timely files this action pursuant to 29 C.F.R., § 1614.408.

## V.

## FACTS

11.     Plaintiff entered on duty with the Federal Bureau of Investigation ("FBI" or "The Bureau" on December 1, 2002 as a Special Agent. From 2009 to 2015, Plaintiff was assigned to the Los Angeles Field Office (LAFO) as the Outreach Coordinator, then a temporary duty assignment to Security, followed by another temporary duty assignment to Applicants, followed by a temporary duty assignment to the Operations Command Center (OCC), and lastly to the Healthcare Fraud Squad.

12.     Plaintiff commenced an EEO Complaint against the bureau in or about 2009 alleging in part that she was subjected to a hostile work environment created by the same management who refused to relocate her workspace to avoid the hostile work environment that was inhibiting her ability to perform her job functions.

13.     Three (3) other employees in the same unit where Plaintiff worked at the time, had desks outside the area that Plaintiff deemed hostile; two of the whom were not African-American, were allowed to work on a completely separate work floor. There was not legitimate business reason not to relocate Plaintiff's work-station and she was deliberately forced to remain in a work environment that she reported as hostile.

14.     Plaintiff and The Bureau reached a settlement of the 2009 EEO matter in 2011. In July 2011, Andrew Black ("Mr. Black") was assigned Supervisor to the Office of Public and Congressional Affairs (OPGA) where Plaintiff worked and was tasked with conducting a diversity training that was part of the settlement agreement.

15.     Mr. Black did not conduct the training in the time specified in the settlement agreement, thus breaching the settlement agreement. Plaintiff advised then acting EEO officer, Tonya Odom about the breach.

3

16.     After Plaintiff's notification of the breach of the settlement agreement, Mr. Black, Plaintiff's hostile work environment was exacerbated.

17.     The harassment consisted of but was not limited to, Mr. Black's harassment of Plaintiff for attending physical therapy for a work related injury, despite his actual notice of Plaintiff's work accommodation that was issued by the FBI Headquarters in Washington, DC.

18.     Plaintiff's legitimate medically necessary rehabilitation was made difficult by the constant harassment she sustained from Mr. Black. For example, Mr. Black insisted that she spend more hours at her desk which was located in the same hostile work area that she complained about in 2009.  In addition, Mr. Black reduced her Performance Appraisal Rating (PAR) rating from "Excellent" to "Successful" with no legitimate basis.  When Plaintiff asked Mr. Black about her rating, she was told that the rating was due to her being out of the office too much which to him was a problem because her job knowledge was not readily accessible for others.  Mr. Black also stated that Plaintiff needed to produce more paper for her time out of the office.

19.     In response to Mr. Black's comments, Plaintiff conducted an internal audit of uploaded documentation and advised him in writing on or about November 30, 2011 that she was in fact the second largest producer of documentation on her team. Out of five (5 )colleagues  with similar responsibilities, Plaintiff had twice as much documentation as the third person and ten (10 ) times more than the 5th placed person.

20.     Plaintiff was the Outreach Coordinator at the time of her PAR and Mr. Black knew that she could not be effective in that position while sitting at her desk the majority of the time. Plaintiff appealed the PAR decision with The Bureau's Human Resources Department.

21.     When it became apparent that Plaintiff was being singled out for filing the 2009 EEO complaint, she requested a transfer out of the unit.  Thereafter, Plaintiff was assigned temporary duty assignments, and was not assigned a permanent squad for

**PLAINTIFF'S COMPLAINT**

over a year which had a negative impact on Plaintiff's ability to perform her job functions.

22.    As a result of The Bureau's constant movement of work assignments, Plaintiff had to fight for a fair PAR rating based on her non-conventional work circumstances.

23.    During this time period, Plaintiff served a temporary duty assignment  in the Los Angeles Field Office's security office assisting with Personnel Risk Mitigation and another temporary duty assignment  assisting with Presidential Appointments and applicant matters.  To further harass Plaintiff and exacerbate her hostile work environment, Plaintiff could not find a Supervisor willing to do her PAR rating.

24.    SSA Chad Basile finally agreed to do Plaintiff's PAR rating and rated her "Outstanding." When Mr. Black was sitting on the desk as Acting ASAC, he told Secretary Yelena Prikhodko to throw SSA Basile's PAR in the trash so that he could handle Plaintiff's PAR rating. Mr. Black wrote an outdated review and tried to lower Plaintiff's rating to "Successful." Mr. Black's review was not a reflection of the work that Plaintiff performed during the rating period and Mr. Black had not considered Plaintiff's personal write-up as is customary in the PAR process.

25.    Plaintiff complained to ASAC Jeff Stanley of the issue since he was responsible for all of Plaintiff's movement throughout the year, and because he was the next level of management.  ASAC Stanley reiterated that he would not be doing Plaintiff's PAR but would talk to Mr. Black to mitigate an unnecessary grievance before the PAR rating was official.  Mr. Black agreed that his write up was not accurate, but he was only willing to rate Plaintiff excellent as opposed to the "Outstanding" rating that she received from SSA Basile.

26.    Plaintiff's experience with her PAR rating was an example of the adverse and arbitrary rules that were created for her after she filed the EEO matter in 2009.  For instance, The Bureau determined that SSA Basile could not rate her because he was not her supervisor  for the "majority of the time period" yet approved Mr. Black's rating

**PLAINTIFF'S COMPLAINT**

her despite the fact that he was not her supervisor at all during the relevant time period.

27.    ASAC Jeff Stanley  eventually assigned Plaintiff to the OCC after a year in a half of transient temporary positions within The Bureau. SSA Chad Basile was Plaintiff's supervisor again in 2013 and was again instructed to reduce Plaintiff's PAR from "Outstanding" to "Successful" by current ASAC Danny Kennedy. In response to this arbitrary instruction, SSA Basile called Plaintiff into his office to advise her that she had been an outstanding employee, and a joy to work with. SSA Basile shared that other than Plaintiff being the only African American Agent on his Squad he did not know why management treated her different than her colleagues.  SSA Basile continued to explain that in all his twenty plus years with The Bureau, he had never been asked to reduce a White agent's rating twice for no valid reason. SSA Basile refused to reduce Plaintiff's rating to "Successful" but changed it to "Excellent" and told her to be careful because "someone"  was obviously after her, as evidenced by her not being treated the same as her White peers.

28. Shortly after SSA Basile refused to reduce Plaintiff's PAR rating, the OCC the OCC was reorganized in October/November 2013.  SSA Basile's time as a supervisor expired; and Plaintiff was given five (5) hours to pick a squad to move to. Oddly, all of the other agents in the OCC, who were White and who had not filed a prior EEO matter, were transferred to the Critical Response Team following the OCC reorganization. Plaintiff was the only non-agent who was not moved to the Critical Response team and the only agent who was tasked to find a new assignment in five (5) hours.

29.    The hostile work environment that Plaintiff experienced continued and came to a head in or about April 2013 when she was subjected to a frivolous OPR investigation based on a non-work related incident involving, Plaintiff and her family and an unlicensed contractor who destroyed our home.

**PLAINTIFF'S COMPLAINT**

30.     Ms. Carr and her family hired Steve Johnson to do work on their home. After the contractor destroyed their home, Ms. Carr and her family found out that the contractor was not a licensed contractor and reported him to the California State Contractor's Licensing Board. The California State Contractor's licensing board, in-turn reported the contractor to the District Attorney's Office for criminal prosecution. On the same date that Mr. Johnson was notified of Plaintiff's report to the California State Contractor's board, he contacted The Bureau to file a fabricated complaint against Plaintiff.

31.     The case (People vs. Steve Johnson, #SA088817) was filed in the Los Angeles County Superior Court and on 01/29/2015 Plaintiff appeared before a judge who granted the District Attorney's Office request to dismiss the case since they no longer had confidence in the facts of their case. Ms. Carr and her family were told by the District Attorney's Office that the reason they are not moving forward with the case was because FBI Inspection personnel interfered with her legitimate criminal complaint by reaching out to Mr. Doyle, Head Deputy, District Attorney's Office and requested the case against Plaintiff's contractor be dismissed.

32.     The initial allegations against Plaintiff were unsubstantiated and dismissed. However, as a further adverse act of discrimination and retaliation for filing the 2009 EEO complaint, The Bureau, changed their initial determination that the findings were unsubstantiated without affording Plaintiff notice or an opportunity to be heard.  Plaintiff alleges on information and belief that this tactic is one that is routinely used by The Bureau against African-American agents.

33.     In January 2014, Plaintiff was involved in a work related car accident and suffered a concussion, herniated disks, torn rotor cuff, and bursitus that exacerbated her previous work related injuries. The trauma from the accident intensified the stress of the OPR investigation. Plaintiff began to suffer from stress-induced bruxism, insomnia, and adjustment disorder. As a result of the car accident, Plaintiff was placed on total disability for 45 days, and was to return to work on a reduced work schedule.

Plaintiff was also seeing a Psychotherapist who recommended that she take time off from work.

34.     Although the FBI drafted the mandatory work accommodation for disability, in further harassment, discrimination, and retaliation, the Los Angeles Field Office was not accommodating at all. Plaintiff was issued temporary restrictions that were intended to make her feel inferior. Plaintiff was subjected to further adverse action by management and given mandated requirements that her Non-African-American co-workers with injuries were not subjected to. Executive management got involved with Plaintiff's work schedule and she was placed on an unofficial Performance Improvement Plan (PIP). This was another form of harassment in that she was accommodated with a modified work schedule but was harassed by her supervisor at the direction of executive management, based on the restrictions resulting from her physical disability.

35.     Plaintiff alleges on information and belief that no other agent on disability was forced to produce a daily report of tasks accomplished. However, Special Agent in Charge (SAC) Timothy Delaney mandated that Plaintiff produce a weekly report. During this time, Plaintiff was forced by ASAC  Aaron Escorza and his successor, who was also male, to have weekly meetings to discuss Plaintiff's PIP. These weekly discussions were also adverse actions that Plaintiff's non-African-American co-workers, who were similarly situated were not subjected to.

36.     On September 5, 2015, Plaintiff was placed on indefinite suspension and shamefully escorted out of the building as a result of OPR's recommendations. During the 9-month period of being on leave without pay, Plaintiff requested permission for outside employment  and never received a response, causing greater financial hardship to Plaintiff.

37.     Plaintiff suffered blatant disperate treatment during the OPR process that here White male counterparts were not subjected to.

8

PLAINTIFF'S COMPLAINT

38.    The OPR's treatment of Plaintiff during the process speaks to the the disproportionate rate of discipline and harasser penalties for lesser offenses that African-American Agents have been subject to at the Bureau.

39.    The Bureau went so far as to call into question Plaintiff's religious beliefs in regard to the OPR process.

40.    Ms. Tene Carr was a dedicated employee of The Bureau who ws discriminated against based upon her race, sex, disability and religious beliefs and in retaliation for bringing a legitimate complaint or racial discrimination and harassment against The Bureau.

41.    Upon information and belief, similarly situated employees of different protected classes were not subjected to the same foregoing hostile work environment and unlawful treatment as Plaintiff.

## VI.

## FIRST CAUSE OF ACTION

### Title VII of the Civil Rights Act of 1964, as amended,

### 42 U.S.C. § 2000, *et seq.*

### (Employment Discrimination on the Basis of Race, Religion, Sex, and Disability)

42.    Plaintiff realleges paragraphs 1 through 41, as well as any subsequent paragraphs in the Complaint, as is fully set forth herein.

43.    Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer to "(1) fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

9

**PLAINTIFF'S COMPLAINT**

44.     Defendants subjected Plaintiff to unwelcome conduct by subjecting her to treatment different from her similarly situated co-workers who were not members of Plaintiff's same protected classes.

45.     Plaintiff's almost daily harassment, along with The Bureau's arbitrary construction of rules and polices that only applied to Plaintiff created an hostile and unbearable work environment that ultimately led to Plaintiff's termination.

46.     A reasonable disabled, Christian, female, African-American employee in Plaintiff's position would have found the work environment to be hostile and polluted by discrimination.

47.     Management level employees knew or should have known of the discrimination that Plaintiff was subjected to.

48.     Defendant did not exercise good reasonable care to prevent the creation of a hostile work environment charged with racial, sex, religious and reprisal discrimination, and did not exercise reasonable care to stop it.

49.     As a direct, legal and proximate result of this discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

50.     Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination.

51.     Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## VII.

## SECOND CAUSE OF ACTION

## Disparate Treatment in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)

## (Plaintiff against All Defendants)

52.     Plaintiff realleges paragraphs 1 through 51, as well as any subsequent paragraphs in the Complaint, as is fully set forth herein.

53.     Defendant discriminated against Plaintiff by terminating her on the basis of her race, sex, religion and disability.

54.     Plaintiff's race, sex, religion and disability were the motivating factors behind Defendant's adverse employment action.

55.     As a direct, legal and proximate cause of the discrimination, Plaintiff has sustained economic injuries, resulting in damages in an amount to be proven at trial.

56.     Defendant's actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination.

57.     Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## VIII.

## THIRD CAUSE OF ACTION

## Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 200e-3

58.     Plaintiff realleges paragraphs 1 through 57, as well as any subsequent paragraphs in the Complaint, as is fully set forth herein.

59.     Section 704(a) of Title VII of the Civil Rights Act of 1964, amended, prohibits employers from discriminating against an employee "because she has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).

60.     Plaintiff engaged in protected activity by making an EEO complaint against the Bureau, by complaining about The Bureau's breach of the settlement reached in the 2009 EEO complaint, and by filing this EEO complaint that is the subject of this complaint.

61.     Plaintiff reasonably believed that the terms and conditions of her employment were unlawful.

62.     As a result of Plaintiff's complaints, Defendant, its agents and/or employees took materially adviser actions against Plaintiff, including but not limited to terminating her and denying her a fair OPR process.

63.     Defendant's, its agents, and/or employees' retaliatory actions would deter a reasonable employee from engaging in protected activity under Title VII.

64.     As a direct, legal and proximate result of the retaliation, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

65.     Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from retaliation.

66.     Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## IX.

## FOURTH CAUSE OF ACTION

### Hostile Work Environment in Violation of 42 U.S.C. § 1981

67.     Plaintiff realleges paragraphs 1 through 66, as well as any subsequent paragraphs in the Complaint, as is fully set forth herein.

68.     42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

69.     " 'Make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

70.     Plaintiff is a "person within the jurisdiction of the United States."

71.     Defendant subjected Plaintiff to unwelcome conduct by discriminating, harassing and retaliating against her on the basis of her race, African-American.

72.     This conduct was severe and pervasive. On a regular, and sometimes daily, basis, Plaintiff observed her non-African-American coworkers enjoy their work-day free of discrimination and harassment based on race.

73.     The conduct of the Defendants created a hostile work environment for Plaintiff because of her race, African-American.

74.     Plaintiff found her work environment to be hostile and heavily charged with race discrimination.

75.     A reasonable person of Plaintiff's race would have found the work environment to be hostile and polluted by race discrimination.

76.     Management level employees knew, or should have known, of the Policy and its employees' conduct in relation thereto.

77.     Defendant did not exercise reasonable care to prevent the creation of a hostile work environment charged with race discrimination, and did not exercise reasonable care to rescind the Policy, even after Plaintiff-Intervenor's repeated opposition to it.

78.     As a direct, legal and proximate result of the retaliation, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

79.     Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from retaliation.

80.     Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## X.

## FIFTH CAUSE OF ACTION

### Race Discrimination (Disparate Treatment) in Violation of 42 U.S.C. § 1981

81.     Plaintiff realleges paragraphs 1 through 80, as well as any subsequent paragraphs in the Complaint, as is fully set forth herein.

82.     Defendant discriminated against Plaintiff by terminating her on the basis of her race, African-American.

83.     Plaintiff's race was the motivating factor behind Defendant's adverse employment action.

84.    As a direct, legal and proximate cause of the discrimination, Plaintiff has sustained economic injuries, resulting in damages in an amount to be proven at trial.

85.    Defendant's actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination.

86.    Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## XI.

## SIXTH CAUSE OF ACTION

### Retaliation in Violation of Title VII of  42 U.S.C. § 1981

87.    Plaintiff realleges paragraphs 1 through 86, as well as any subsequent paragraphs in the Complaint, as is fully set forth herein.

88.    Plaintiff made numerous complaints to Defendant's agents and employees about the discriminatory actions that she was subjected to based on her race, African-American.

89.    Plaintiff reasonably believed that the terms and conditions of her employment were unlawful.

90.    As a result of Plaintiff's complaints, Defendant, its agents and/or employees took materially adviser actions against Plaintiff, including but not limited to terminating her and denying her a fair OPR process.

91.    Defendant's, its agents, and/or employees' retaliatory actions would deter a reasonable employee from engaging in protected activity under §1981.

92.    As a direct, legal and proximate result of the retaliation, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

93.    Defendant's unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from retaliation.

///

///

///

**PLAINTIFF'S COMPLAINT**

WHEREFORE, plaintiffs pray for judgment against defendants and each of them as follows:

1. For a determination that Defendant's actions, polices, and practices as alleged herein are unlawful;

2. For reinstatement;

3. For lost wages, penalties and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions, in an amount to be proven at trial;

4. For compensatory damages for Plaintiff's emotional pain and suffering in an amount to be proven at trial;

5. For medical and related expenses according to proof at trial;

6. For punitive damages in an amount to be proven at trial;

7. For interest on lost wages, compensation, and damages, including pre-and post-judgment interest and an upward adjustment for inflation;

8. For an order enjoining Defendant from engaging in the unlawful acts complained of herein;

9. For her attorneys' fees and costs of suit pursuant to 42 U.S.C. § 200e-59k), 42 U.S.C. § 1988, and other laws;

10. For such other and further relief as the court may deem just and proper.

DATED:  October 22, 2019          LAW OFFICE OF MICHAEL J. CURLS

/s/ Nichelle D. Jones

_____
By:  Nichelle D. Jones, Attorneys for
Plaintiff TENE CARR

**PLAINTIFF'S COMPLAINT**

**<u>JURY DEMAND</u>**

Plaintiff hereby demands a jury trial in the within entitled action.

DATED:  October 22, 2019          LAW OFFICE OF MICHAEL J. CURLS

/s/ Nichelle D. Jones

_____

By:  Nichelle D. Jones, Attorneys for
Plaintiff TENE CARR

**PLAINTIFF'S COMPLAINT**