Michael J. Curls (SBN 159651)
Nichelle D. Jordan (SBN 186308)
LAW OFFICE OF MICHAEL J. CURLS
4340 Leimert Blvd., Suite 200
Los Angeles, CA 90008
Telephone:      (323) 293-2314
Facsimile:      (323) 293-2350
Email:          michael@mjclawoffice.com
                nichelle@mjclawoffice.com

Attorneys for Plaintiff TENE CARR

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TENE CARR,<br><br>               Plaintiff,<br><br>          vs.<br><br>MONTY WILKINSON (FEDERAL BUREAU OF INVESTIGATION) AND DOE DEFENDANTS 1-10 INCLUSIVE<br><br>               Defendants | USDC CASE NO 2:19-CV-09112-CBM(JEMX)<br><br>PLAINTIFF'S SECOND AMENDED COMPLAINT FOR:<br><br>1. EMPLOYMENT DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000, ET SEQ.<br><br>2. DISPERATE TREATMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000e-2<br><br>3. RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED, 42 U.S.C. § 2000-e3<br><br>4. DISABILITY DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff TENE CARR, by and through her attorneys of record Michael J. Curls and Nichelle D. Jordan of the Law Office of Michael J. Curls, alleges and complains as follows:

**I.**

**JURISDICTION AND VENUE**

1.      Jurisdiction is proper in the United States District Court for the Central District of California pursuant to 29 U.S.C. § 791, 42 U.S.C. § 20003 *et* seq., 28 U.S.C. § 1331 and 28 U.S.C. § 1343 (3) and (4), *et seq*.

2.      Venue is proper in the Western Division of California because the acts or omissions which form the basis of the Plaintiff's claims occurred in the City of Los Angeles, within the Central District.

**II.**

**PARTIES**

3.       Plaintiff, Tene Carr is an African American, Christian female who was employed as a Special Agent with the Federal Bureau of Investigation from December 1, 2002 until the time of her termination, June 1, 2015.

4.      Defendant Monty Wilkinson is the Acting United States Attorney General, the head of the Department of Justice.  The FBI is part of the Department of Justice. Defendant Wilkinson is sued in his official capacity.

**III.**

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

5.      Plaintiff has exhausted all of her administrative remedies.

6.      On or about June 24, 2015, Plaintiff timely contacted an EEO counselor and subsequently filed an informal complaint of discrimination based on race, religion, disability and reprisal.

7.      After the agency issued a Notice of Right to File, dated October 23, 2015, Plaintiff timely filed a formal EEO complaint, on or around November 6, 2015 complaining of the discriminatory non-selection for the position at issue herein.

8.      Since 180 days from the date of filing her complaint has passed, and because the Agency did not issue a final decision, Plaintiff now timely files this action pursuant to 29 C.F.R., § 1614.408.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
*Carr v. Wilkinson USDC Case No. 2:19-CV-09112-CBM(JEMX)*

# IV.

## INTRODUCTION

9.      Plaintiff Tene Carr ("Plaintiff" or "Ms. Carr") brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e *et seq.*; and the Rehabilitation Act, 29 U.S.C. § 791 ; for relief for discrimination based on race (African-American); religion (Christian); sex (Female); disability (Physical and Mental); and Reprisal (Retaliation from 2009 and 2015 EEO Complaint).

10.      The consequent hostile work environment, discriminatory termination and retaliation at the hands of Defendants and its agents have caused Plaintiff harm.

## PLAINTIFF'S HISTORY WITH THE BUREAU

11.      Plaintiff entered on duty with the Federal Bureau of Investigation ("FBI" or "The Bureau" on December 1, 2002 as a Special Agent. From 2009 to 2015, Plaintiff was assigned to the Los Angeles Field Office (LAFO) as the Outreach Coordinator, then a temporary duty assignment to Security, followed by another temporary duty assignment to Applicants, followed by a temporary duty assignment to the Operations Command Center (OCC), and lastly to the Healthcare Fraud Squad.

12.      Plaintiff commenced an EEO Complaint against the bureau in or about 2009 alleging in part that she was subjected to a hostile work environment created by the same management who refused to relocate her workspace to avoid the hostile work environment that was inhibiting her ability to perform her job functions.

13.      Plaintiff and The Bureau reached a settlement of the 2009 EEO matter in or about Fall, 2011. Andrew Black ("Mr. Black") was assigned Supervisor to the Office of Public and Congressional Affairs (OPGA) where Plaintiff worked and was tasked with conducting the diversity training that was part of the settlement agreement.

14.      Mr.  Black did not conduct the training in the time specified in the settlement agreement, thus breaching the settlement agreement. As a result of the breach, on or about November 28, 2011, Plaintiff made a timely complaint, in writing, to then acting EEO officer,

Tonya Odom about the breach.  In her complaint, Plaintiff requested that her 2009 complaint be reinstated to the EEOC.

15.     Ms. Odom acknowledged receipt of Plaintiff's notification of the breach of the settlement agreement, however no corrective action was taken by the Bureau in response thereto and Plaintiff's complaint was not reinstated as requested.

16.     Although no corrective action was taken, Plaintiff is informed and thereon alleges that Mr. Black was notified that Plaintiff lodged a complaint about the Bureau's breach of the settlement agreement because after Plaintiff's notification of the breach of the settlement agreement, Plaintiff's hostile work environment was exacerbated by Plaintiff's managers and supervisors including Mr. Black.

17.     Plaintiff was ultimately terminated from her employment with the Bureau.

**V.**

**FACTS GIVING RISE TO RELIEF**

18.     Throughout her service with the Bureau, Plaintiff has been subjected to discriminatory treatment based upon her race, African-American, her sex, female, her disability and because of her religion, Christianity.

19.     In January 2014, Plaintiff was involved in a work related car accident and suffered a concussion, herniated disks, torn rotor cuff, and bursitis that exacerbated her previous work related injuries. The trauma from the accident intensified the stress of the OPR investigation. Plaintiff began to suffer from stress-induced bruxism, insomnia, and adjustment disorder. As a result of the car accident, Plaintiff was placed on total disability for 45 days, and was to return to work on a reduced work schedule. Plaintiff was also seeing a Psychotherapist who recommended that she take time off from work.

20.     At the time of Plaintiff's injury, Plaintiff's necessary job functions included but were not limited to analytical investigation, surveillance, and investigation of white collar crimes.  As a community relations agent, Plaintiff served as the face of the bureau, going into the community to build relationships and explain what The Bureau could offer in the

community.  Plaintiff was qualified to perform her essential job functions with reasonable accommodations.

21.     Although the FBI drafted the mandatory work accommodation for disability, in further harassment, discrimination, and retaliation, the Los Angeles Field Office was not accommodating at all. Plaintiff was issued temporary restrictions that  were intended to make her feel inferior. Plaintiff was subjected to further adverse action by management and given mandated requirements that her Non-African-American co-workers with injuries were not subjected to. Executive management got involved with Plaintiff's work schedule and she was placed on an unofficial Performance Improvement Plan (PIP). Because Plaintiff was being micro-managed and the only employee required to account for each moment of her time in writing, the Bureau was intentionally setting Plaintiff up for failure by mandating that she spend her time on this manufactured "busy work" in lieu of performing the essential functions of her job.  This was another form of harassment in that she was accommodated with a modified work schedule but was harassed by her supervisor at the direction of executive management, based on the restrictions resulting from her physical disability.

22.     Plaintiff alleges on information and belief that no other agent on disability was forced to produce a daily report of tasks accomplished. However, Special Agent in Charge (SAC) Timothy Delaney mandated that Plaintiff produce a weekly report. During this time, Plaintiff was forced by ASAC  Aaron Escorza and his successor, who was also male, to have weekly meetings to discuss Plaintiff's PIP. These weekly discussions were also adverse actions that Plaintiff's non-African-American co-workers, who were similarly situated were not subjected to.

23.     In or about 2013, Ms. Carr and her family hired Steve Johnson to do work on their home.  After the contractor destroyed their home, Ms. Carr and her family found out that the contractor was not a licensed contractor and reported him to the California State Contractor's Licensing Board. The California State Contractor's licensing board, in-turn reported the contractor to the District Attorney's Office for criminal prosecution. On the same date that Mr.

Johnson was notified of Plaintiff's report to the California State Contractor's board, he contacted The Bureau to file a fabricated complaint against Plaintiff.

24.     The case (*People vs. Steve Johnson*, Los #SA088817) was filed in the Los Angeles County Superior Court and on 01/29/2015 Plaintiff appeared before a judge who granted the District Attorney's Office request to dismiss the case since they no longer had confidence in the facts of their case. Ms. Carr and her family were told by the District Attorney's Office that the reason they are not moving forward with the case was because FBI Inspection personnel interfered with her legitimate criminal complaint by reaching out to Mr. Doyle, Head Deputy, District Attorney's Office and requested the case against Plaintiff's contractor be dismissed.

25.     The initial allegations against Plaintiff were unsubstantiated and dismissed. However, as a further adverse act of discrimination and retaliation, The Bureau, changed their initial determination that the findings were unsubstantiated without affording Plaintiff notice or an opportunity to be heard.  Plaintiff alleges on information and belief that this tactic is one that is routinely used by The Bureau against African-American agents.  Plaintiff further alleges on information and belief that the above-referenced actions of the Bureau were in retaliation for Plaintiff's prior complaints of race discrimination and harassment.

26.     On September 5, 2015, Plaintiff was placed on indefinite suspension and shamefully escorted out of the building as a result of OPR's recommendations. During the 9-month period of being on leave without pay, Plaintiff requested permission for outside employment  and never received a response, causing greater financial hardship to Plaintiff.

27.     Plaintiff suffered blatant desperate treatment during the OPR process that her White male counterparts were not subjected to.

28.     The OPR's treatment of Plaintiff during the process speaks to the disproportionate rate of discipline and harsher penalties for lesser offenses that African-American Agents have been subjected to at the Bureau.

29.     The Bureau went so far as to call into question Plaintiff's religious beliefs in regard to the OPR process.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
*Carr v. Wilkinson USDC Case No. 2:19-CV-09112-CBM(JEMX)*

30.     Ms. Tene Carr was a dedicated employee of The Bureau who was discriminated against based upon her race, sex, disability and religious beliefs and in retaliation for bringing a legitimate complaint or racial discrimination and harassment against The Bureau.

31.     Upon information and belief, similarly situated employees of different protected classes were not subjected to the same foregoing hostile work environment and unlawful treatment as Plaintiff.

## VI.

### FIRST CAUSE OF ACTION

### Title VII of the Civil Rights Act of 1964, as amended,

### 42 U.S.C. § 2000, *et seq.*

### (Employment Discrimination on the Basis of Race, Religion, Sex, and Disability)

32.     Plaintiff realleges paragraphs 1 through 31, as well as any subsequent paragraphs in the Complaint, as is fully set forth herein.

33.     Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer to "(1) fail or refuse to hire or to discharge an individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

34.     Defendants subjected Plaintiff to unwelcome conduct by subjecting her to treatment different from her similarly situated co-workers who were not members of Plaintiff's same protected classes.

35.     Plaintiff's almost daily harassment, along with The Bureau's arbitrary construction of rules and polices that only applied to Plaintiff created a hostile and unbearable work environment that ultimately led to Plaintiff's termination.

36.     During the course of the investigation concerning Plaintiff's contractor, Candice Will, ("A.D. Will") Assistant Director in the Office of Professional Responsibility chastised Plaintiff for identifying as Christian and arbitrarily determined that as a Christian, Plaintiff's job performance should be judged by a different standard than her non-Christian peers.  Because A.D. Will concluded that Plaintiff was not "acting like a Christian" with regards to her interaction with Mr. Johnson, A.D. Will concluded that Plaintiff lacked the candor to continue her employment with the Bureau thereby using Plaintiff's religious beliefs as a criteria to terminate her.

37.     Other employees who are not open about their religious beliefs at the Bureau are not held to the same standards that Plaintiff, as an openly Christian believer was subjected to at the Bureau.  Other employees at the Bureau who are not openly Christian and have requested permission to work outside of the Bureau are routinely afforded this opportunity while Plaintiff's request was denied based upon her religion.

38.     A reasonable disabled, Christian, female, African-American employee in Plaintiff's position would have found the work environment to be hostile and polluted by discrimination.

39.     In addition to the foregoing, Plaintiff was not afforded the same benefits of employment as her male counterparts at the Bureau.  Male agents at the Bureau are not mandated to participate in performance improvement plans as a result of their medically necessary accommodations.  In addition, the Male agents are not offered menial tasks and "busy work" while on leave but are instead afforded reasonable accommodations to allow them to continue to do the work of the bureau during their disability.

40.     In addition, when Male agents request outside employment, their requests are evaluated and considered.

41.     Because of Plaintiff's gender, Female, the Bureau intentionally interfered with her ability to succeed in an effort to knowingly set Plaintiff up for termination.

42.     Furthermore, there is a policy and practice in the Bureau whereby African-American agents are subjected to more investigations followed by harsher discipline than there

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
*Carr v. Wilkinson USDC Case No. 2:19-CV-09112-CBM(JEMX)*

non-African-American counterparts.  For example, White agents who commit far more egregious offenses than what Plaintiff was accused of are not subjected to security clearance revocation and/or termination like African-American agents.  Moreover, Agents who are not African-American who are considered for security clearance revocation are not terminated once it is determined that there was no basis for the security revocation.  Whereas when the revocation of Plaintiff's security clearance was rescinded, the Bureau continued to fabricate grounds for the termination of Plaintiff.

43.     In addition, when agents who are not African-American request outside employment, their requests are evaluated and considered.

44.     Management level employees knew or should have known of the discrimination that Plaintiff was subjected to.

45.     Defendant did not exercise good reasonable care to prevent the creation of a hostile work environment charged with racial, sex, religious and reprisal discrimination, and did not exercise reasonable care to stop it.

46.     As a direct, legal and proximate result of this discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

47.     Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## VII.

### SECOND CAUSE OF ACTION

**Disparate Treatment in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)**

**(Plaintiff against All Defendants)**

48.     Plaintiff realleges paragraphs 1 through 47, as well as any subsequent paragraphs in the Complaint, as is fully set forth herein.

49.     Defendant discriminated against Plaintiff by terminating her on the basis of her race, sex, religion and disability.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
*Carr v. Wilkinson USDC Case No. 2:19-CV-09112-CBM(JEMX)*

50.     Plaintiff's race, sex, religion and disability were the motivating factors behind Defendant's adverse employment action.

51.     As a direct, legal and proximate cause of the discrimination, Plaintiff has sustained economic injuries, resulting in damages in an amount to be proven at trial.

52.     Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## VIII.

### THIRD CAUSE OF ACTION

**Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended,**

**42 U.S.C. § 200e-3**

53.     Plaintiff realleges paragraphs 1 through 52, as well as any subsequent paragraphs in the Complaint, as is fully set forth herein.

54.     Section 704(a) of Title VII of the Civil Rights Act of 1964, amended, prohibits employers from discriminating against an employee "because she has opposed any practice made an unlawful employment practice by this subchapter."  42 U.S.C. § 2000e-3(a).

55.     Plaintiff engaged in protected activity by making an EEO complaint against the Bureau, and by complaining about The Bureau's breach of the settlement reached in the 2009 EEO complaint.

56.     Following Plaintiff's 2009 EEO Complaint, Plaintiff reached a settlement agreement with the Bureau.  Plaintiff alleges on information that the filing of the 2009 EEO Complaint placed her on the Bureau's radar and subjected her to continuous retaliation up to and including the time of her termination.

57.     Within 30 days of the signing  of the settlement agreement reached following Plaintiff's 2009 EEO Complaint, the Bureau agreed to conduct Diversity and Inclusion training.

58.     When the Bureau failed to conduct the training as agreed, Plaintiff made a timely complaint in writing to the EEO Acting Director, Tonya Odom in or about November 2011.  Ms. Odom acknowledged receipt of Plaintiff's complaint but failed to respond to Plaintiff's allegations or to take any corrective action in response thereto.

59.     Plaintiff alleges on information and belief that her then supervisor, Andrew Black knew that Plaintiff complained about the breach of the settlement agreement. When Mr. Black learned about Plaintiff's complaints, Plaintiff's work environment became increasingly hostile.

60.     First, Mr. Black humiliated Plaintiff by mocking the need for comprehensive diversity and inclusion training in the Bureau to Plaintiff and her peers.

61.     When Plaintiff's work environment with Mr. Black became increasingly hostile, and she realized that she would not be successful, Plaintiff asked to be relocated in late 2011 early 2012.

62.     Instead of relocating Plaintiff to a work assignment where she could thrive and advance as an agent, Plaintiff was bounced around from department to department.  The transient nature of employment that the Bureau created for Plaintiff in response to her complaints set the state for her failure at the Bureau. First, Plaintiff was assigned "busy work" and not allowed to perform her essential job functions.  Moreover, because Plaintiff was bounced around from department to department, it was almost impossible for Plaintiff to find a supervisor to evaluate her work. When Plaintiff finally found a supervisor to evaluate her, the Bureau attempted to throw away Plaintiff's exemplary rating to place a substandard evaluation in her personnel file.  The Bureau began to bounce Plaintiff around in her work assignments in 2012.

63.     Thereafter in about July 2012, the Bureau initiated an investigation against Plaintiff based upon an unrelated dispute that Plaintiff and her family were having with a contractor that was working on Plaintiff's home.

64.     The Bureau intentionally interfered with Plaintiff's ability to prosecute the contractor in proceedings before the Los Angeles Superior Court.

65.     In addition, the Bureau used Plaintiff's dispute with the contractor as a basis to revoke Plaintiff's security clearance and terminate her.

66.     Plaintiff fully cooperated with the internal investigation.  When Plaintiff was cleared of any wrongdoing, the Bureau directed another investigation of "newly identified

issues."  The second investigation was handled by the Office of Professional Responsibility of the Bureau.

67.     Although Plaintiff was exonerated in both investigations, the Bureau substantiated findings of "misuse of position" and "lack of candor."  Although Plaintiff never received notice of these investigations, by letter dated August 11, 2014, the Bureau proposed that Plaintiff be dismissed form the employment rolls of the Bureau.

68.     As a result of this investigation, Plaintiff's security clearance was revoked. Although Plaintiff successfully challenged the revocation of her security clearance, the Bureau continued with termination.  When other employees who are not a member of a protected class and have not raised complaints related to their membership in a protected class successfully defeat an attempted revocation of an agent's security clearance, the Bureau determines that there is no ground for termination. However in Plaintiff's case, although the Bureau determined that Plaintiff had not committed any act that should deprive her of her security clearance, the Bureau moved forward with her termination.

69.     In addition, when Plaintiff suffered a workplace injury in about January 2014, instead of offering Plaintiff reasonable work accommodations, the Bureau attempted to use Plaintiff's disability to sabotage her employment with the Bureau.

70.     Following the denial of reasonable accommodations, Plaintiff was investigated and terminated on fabricated charges that would not have subjected her white, male counterparts to security clearance revocation or termination.

71.     The conduct set forth above was daily and continuous from the time that Plaintiff complained about the Bureau's breach of the settlement agreement following her 2009 Complaint up and until the time of her termination.

72.     Plaintiff reasonably believed that the terms and conditions of her employment were unlawful.

73.     As a result of Plaintiff's complaints, Defendant, its agents and/or employees took materially adviser actions against Plaintiff, including but not limited to terminating her and denying her a fair OPR process.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
*Carr v. Wilkinson USDC Case No. 2:19-CV-09112-CBM(JEMX)*

74.     Defendant's, its agents, and/or employees' retaliatory actions would deter a reasonable employee from engaging in protected activity under Title VII.

75.     As a direct, legal and proximate result of the retaliation, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

76.     Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

## IX.

## FOURTH CAUSE OF ACTION

### Disability Discrimination in Violation of the Rehabilitation Act

77.     Plaintiff realleges paragraphs 1 through 76, as well as any subsequent paragraphs in the Complaint, as is fully set forth herein.

78.     At all times mentioned in this complaint, 29 U.S.C. § 791 was in full force and effect and was binding on the Bureau.

79.     Plaintiff developed a disability within the meaning of 29 U.S.C. § 791(f), 29 U.S.C. 705(20, and 42 U.S.C. 12102 while working for the Bureau.

80.     In January 2014, Plaintiff was involved in a work related car accident and suffered a concussion, herniated disks, torn rotor cuff, and bursitis that exacerbated her previous work related injuries. The trauma from the accident intensified the stress of the OPR investigation. Plaintiff began to suffer from stress-induced bruxism, insomnia, and adjustment disorder. As a result of the car accident, Plaintiff was placed on total disability for 45 days, and was to return to work on a reduced work schedule. Plaintiff was also seeing a Psychotherapist who recommended that she take time off from work.

81.     At the time of Plaintiff's injury, Plaintiff's necessary job functions included but were not limited to analytical investigation, surveillance, and investigation of white collar crimes.  As a community relations agent, Plaintiff served as the face of the bureau, going into the community to build relationships and explain what The Bureau could offer in the community.  Plaintiff was qualified and able to perform her essential job functions with reasonable accommodations.

82.     Although the FBI drafted the mandatory work accommodation for disability, in further harassment, discrimination, and retaliation, the Los Angeles Field Office was not accommodating at all. Plaintiff was issued temporary restrictions that  were intended to make her feel inferior. Plaintiff was subjected to further adverse action by management and given mandated requirements that her Non-African-American co-workers with injuries were not subjected to. Executive management got involved with Plaintiff's work schedule and she was placed on an unofficial Performance Improvement Plan (PIP). Because Plaintiff was being micro-managed and the only employee required to account for each moment of her time in writing, the Bureau was intentionally setting Plaintiff up for failure by mandating that she spend her time on this manufactured "busy work" in lieu of performing the essential functions of her job.  This was another form of harassment in that she was accommodated with a modified work schedule but was harassed by her supervisor at the direction of executive management, based on the restrictions resulting from her physical disability.

83.     The Burau had reasonable, sufficient, actual and constructive notice of Plaintiff's disability.  Plaintiff provided the Bureau with ongoing doctors' notes that described the nature and extent of her impairment to her supervisors and the Bureau's Office of Workers Compensation.  Plaintiff made multiple requests for accommodations to her supervisors supported by her doctor's notes.

84.     Defendants subjected Plaintiff to unwelcome conduct by subjecting her to treatment different from her similarly situated co-workers who did not suffer a disability.

85.     Plaintiff's almost daily harassment, along with The Bureau's arbitrary construction of rules and polices that only applied to Plaintiff created a hostile and unbearable work environment that ultimately led to Plaintiff's termination.

86.     A reasonable disabled, employee in Plaintiff's position would have found the work environment to be hostile and polluted by discrimination.

87.     Management level employees knew or should have known of the discrimination that Plaintiff was subjected to.

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
*Carr v. Wilkinson USDC Case No. 2:19-CV-09112-CBM(JEMX)*

88.     Defendant did not exercise good reasonable care to prevent the creation of a hostile work environment charged with disability and reprisal discrimination, and did not exercise reasonable care to stop it.

89.     As a direct, legal and proximate result of this discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

90.     Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

WHEREFORE, plaintiffs pray for judgment against defendants and each of them as follows:

1.  For a determination that Defendant's actions, polices, and practices as alleged herein are unlawful;

2.  For reinstatement;

3.  For lost wages, penalties and all other compensation denied or lost to Plaintiff by reason of Defendant's unlawful actions, in an amount to be proven at trial;

4.  For compensatory damages for Plaintiff's emotional pain and suffering in an amount to be proven at trial;

5.  For medical and related expenses according to proof at trial;

6.  For interest on lost wages, compensation, and damages, including pre-and post-judgment interest and an upward adjustment for inflation;

7.  For an order enjoining Defendant from engaging in the unlawful acts complained of herein;

8.  For her attorneys' fees and costs of suit pursuant to 42 U.S.C. § 200e-59k), 42 U.S.C. § 1988, and other laws;

///
///
///

9.   For such other and further relief as the court may deem just and proper.

DATED:  June 14, 2021                     LAW OFFICE OF MICHAEL J. CURLS

*/s/ Nichelle D. Jordan*

By:  Nichelle D. Jordan, Attorneys for
Plaintiff TENE CARR

## **JURY DEMAND**

Plaintiff hereby demands a jury trial in the within entitled action.

DATED:  June 14, 2021                     LAW OFFICE OF MICHAEL J. CURLS

*/s/ Nichelle D. Jordan*

By:  Nichelle D. Jordan, Attorneys for
Plaintiff TENE CARR

**PLAINTIFF'S FIRST AMENDED COMPLAINT**
*Carr v. Wilkinson USDC Case No. 2:19-CV-09112-CBM(JEMX)*

1    **PROOF OF SERVICE**

2    **STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

3         I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party
4    to the within action; my business address is 4340 Leimert Blvd., Suite 200, Los Angeles, CA 90008.

5         On June 14, 2021, I served the foregoing documents described **PLAINTIFF'S SECOND AMENDED COMPLAINT**
     on the interested parties.

6    **X**         By placing true copies thereof enclosed in sealed envelopes addressed follows:

7                            HILLARY M. BURRELLE
8                          Assistant United States Attorney
                           Federal Building, Suite 7516
9                            Los Angeles, CA 90012
                           Facsimile:  (213) 894-7819
10                         *Hillary.burrelle@usdoj.gov*

11             By Express Mail – Overnight Delivery

12             By Mail as follows:  I am readily familiar with the firm's business practices for collection and
13       processing for mailing with the United States Postal Service.  Under that pract0ice it would be
         deposited with the United States Postal Service on that same day in the ordinary course of
14       business with postage thereon fully prepaid at Los Angeles, California.  The envelope was sealed
         and placed for collection and mailing on that date following ordinary business practices.  I am
15       aware that on motion of the party served, service is presumed invalid if the postal cancellation date
         or postage meter date on the envelope is more than one day after the date of deposit for mailing
16       contained in the affidavit.

17
     **X**         By Email:  Pursuant to the agreement of counsel regarding email service, I served the documents
18             to the email addresses listed above.

19
                      Executed on June 14, 2021 at Los Angeles, California.
20

21   **X (Federal)**              I declare under penalty of perjury under the laws of the United States of
                           America that the above is true and correct.

22       Nichelle D. Jordan                                  */s/ Nichelle D. Jordan*
         Type or Print Name                                  Signature
23

24

25

26

27

28

                                    17
                     **PLAINTIFF'S FIRST AMENDED COMPLAINT**
                  ***Carr v. Wilkinson USDC Case No. 2:19-CV-09112-CBM(JEMX)***